# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROLAND COCKFIELD,                          :
                                           :
                  Plaintiff,               :        CIVIL ACTION NO.
                                           :        3:00CV00564 (JBA)
V.                                         :
                                           :
UNITED TECHNOLOGIES CORP.,                 :
PRATT & WHITNEY DIVISION (sic)             :
                                           :
                  Defendant.               :        DECEMBER 3, 2003
                                           :

## JOINT TRIAL MEMORANDUM

Pursuant to this Court's order, the parties respectfully submit this Joint Trial Memorandum.

1.  **TRIAL COUNSEL:**

    Plaintiff:
    Charles G. Parks, Jr. (ct16784)
    Parks & Associates, 160 Forest Street
    Stamford, CT 06901-2134
    (203) 359-3860
    fax (203) 323-7398

    Defendant:
    Albert Zakarian (ct04201)
    Daniel A. Schwartz (ct15823)
    Day, Berry & Howard, LLP
    CityPlace I
    185 Asylum Street
    Hartford, CT 06103-3499
    (860) 275-0100
    fax (860) 275-0343



2.  **JURISDICTION:**

This Court has jurisdiction pursuant to 42 U.S.C §§ 2000e-5(f).

3.  **JURY/NON-JURY:**

The Plaintiff's single count of race discrimination under Title VII is being tried to the Court.

4.  **LENGTH OF TRIAL:**

Counsel expect a trial to take 2-3 days.

5.  **FURTHER PROCEEDINGS:**

Pratt & Whitney requests a hearing on its Motions in Limine.  Pratt & Whitney reserves the right to file a Motion for Judgment as a Matter of Law at the close of Plaintiff's case-in-chief and/or at the close of all evidence, pursuant to Fed. R. Civ. Pro. 52(c).

Plaintiff joins in a request for a hearing on his Motion in Limine.

6.  **NATURE OF THE CASE:**

**Plaintiff's Statement:**

The Plaintiff, Roland Cockfield, ("Cockfield"), is an African American and had been employed by the defendant, United Technologies Corp., Pratt & Whitney Division ("Pratt") since December of 1964 until June 28, 1991, as a Plant Protection Officer.  At the time of Cockfield's termination, Cockfield held the position of Senior Plant Protection Officer.  Further, at the time of Cockfield's termination in June of 1991, Cockfield was the only African American holding the position of Senior Plant Protection Officer in the Middletown facility of Pratt.

On June 28, 1991, Cockfield was terminated from his position of Senior Plant Protection Officer for allegedly stealing. The reason stated for the terminating of Cockfield was that Cockfield accepted food from a cashier without paying for it. Specifically, in June of 1991, Cockfield placed a hot dog and a cup of water on a luncheon tray in the company cafeteria and proceeded to the cashier station manned by Edith Wiknik. Ms. Wiknik was a cashier and cafeteria manager for ARA, a food service vendor under contract to Pratt. Cockfield tendered a five-dollar bill to Ms. Edith Wiknik who returned to Mr. Cockfield five ones. Without inspecting his change Mr. Cockfield placed the change in his pocket.

Following the transaction, Mr. Cockfield was approached by the other Security Officers and asked whether Ms. Wiknik had given him his lunch without taken the appropriate amount of money for his lunch. Mr. Cockfield, upon checking his change, stated that Ms. Wiknik had not taken the appropriate funds for his lunch. Mr. Cockfield also acknowledge that on occasion over a number of months, Ms Wiknik would pay for his meal, on occasion, out of gratitude for his assisting her in performing some of her heavy lifting duties and other efforts to assist her, e.g. getting a handi-capped parking location. Mr. Cockfield's actions were motivated out of compassionate and understanding of Ms. Wiknik's failing medical condition. Ms. Wiknik was suffering from liver cancer at the time.

Ms. Wiknik informed Pratt that: (1) that because of her condition she had permission to offer minor gratuities to any Pratt employees who assisted her; (2) that when she did give Cockfield a free meal, that this was a personal gesture and she would cover the cost from her personal funds at the end of the day; and (3) that her actions toward Mr. Cockfield was purely out

-3-

of her gratitude. Out of respect for Ms. Wiknik dignity, Mr. Cockfield accepted Ms. Wiknik gestures of appreciation.

Pratt was fully aware of the of the facts and circumstances surrounding the relationship between Ms. Witnik and Mr. Cockfield during its investigation, however, it nonetheless opted to terminate Mr. Cockfield allegedly for theft with full knowledge that no thief had occurred.

**Defendant's Statement:**

Mr. Cockfield, a former Pratt & Whitney security officer, was caught on June 26, 1991 not paying for his cafeteria meal. After an investigation, which found, among other things that Mr. Cockfield had received free or reduced price lunches for at least six months – and possibly much longer – his employment was terminated on June 28, 1991 for violating company policies. Plaintiff has since tried to concoct a race discrimination claim out of his termination. However, as the facts will show, Plaintiff's termination had nothing to do with his race and everything to do with his repeated, and admitted, receipt of food from the cafeteria without paying for it. Further, the facts will show that Plaintiff engaged in a pattern of deceptive conduct by participating in a scheme to make it appear as if a sale of goods actually occurred with the cashier. Plaintiff was confronted during an internal investigation and admitted to his misconduct and further admitted that he had been receiving meals without paying for them for at least six months. Accordingly, Pratt terminated Plaintiff's employment for violating company policy.

7.    **TRIAL BY MAGISTRATE:**

The parties consent to a trial before a United States District Court Magistrate Judge.

8.   **LIST OF WITNESSES:**

**Plaintiff's List of Witnesses:** [1]

Roland Cockfield

Expected Testimony

➢   All the facts and circumstance surround in termination for the employment of Pratt & Witney

Robert Graves[2]
391 Main St
Deep River, CT 06417
860 525 9224

Expected Testimony:

➢   That he was employed with Pratt & Whitney Aircraft from March 1967 until his retirement some time after November 1994.

➢   That during his employment he was personally familiar with the Plaintiff, being a co-worker to the plaintiff.

---

[1] In addition to the general objections listed herein, Defendant objects to any witnesses to the extent they intend to offer lay opinion evidence or to testify about matters on which they lack personal knowledge or to the extent they will seek to report inadmissible hearsay statements. Defendant also intends to object to the extent any witnesses included on Plaintiff's witness list intend to testify about their own experiences at Pratt & Whitney or offer conclusory statements about perceived race discrimination. *See* Fed. R. Evid. 402, 403, 602, 701, 802.

[2] Defendant objects to the expected testimony of Robert Graves on the grounds that his testimony regarding Plaintiff's qualifications is irrelevant. Moreover, his observations over the historical practices are irrelevant to the issues in this case; the issue to be decided is whether the Plaintiff was discriminated against based on his race. In addition, his testimony regarding company-wide disciplinary practices should be precluded because the witness lacks personal knowledge and his testimony rests on hearsay. *See* Fed. R. Evid. 402, 403, 602, 802.

> That during his tenure of employment he observed Plant Protection Officers and
> tradesmen received special consideration by reduced rates on meals and sometimes free
> food at the Pratt & Whitney cafeteria at

> To his knowledge and belief, Roland Cockfield was the only person ever
> disciplined for receiving free food.

Billy Mitchell[3]
173 Basswood Dr.
Middletown CT 06088
860 344 8633

Expected Testimony:

> That he was employed with Pratt & Whitney Aircraft from March 1967 until his
> retirement some time after November 1994.

> That during his employment he was personally familiar with the Plaintiff, being a
> co-worker to the plaintiff.

> That during his tenure of employment he observed Plaint Protection Officers and
> tradesmen received special consideration by reduced rates on meals and sometimes free
> food at the Pratt & Whitney cafeteria.

---

[3] Defendant objects to the expected testimony of Billy Mitchell on the grounds that his testimony regarding Plaintiff's qualifications is irrelevant, particularly because Mr. Mitchell worked in a different department from the Plaintiff. Moreover, his observations over the historical practices are irrelevant to the issues in this case; the issue to be decided is whether the Plaintiff was discriminated against based on his race. In addition, his testimony regarding company-wide disciplinary practices should be precluded because the witness lacks personal knowledge and his testimony rests on hearsay. *See* Fed. R. Evid. 402, 403, 602, 802.

> To his knowledge and belief, Roland Cockfield was the only person ever disciplined for receiving free food.

Sheila Wiknik[4]
797 Randolp Road
Middletown CT 06457
860 344 9999

> Will testify as to the medical condition of Ms. Wiknik.

Robert Malcolm[5]
40 Woodland Hgts
Middlefield CT 06455
860 346 5037

> Will testify that it had been common knowledge that security personal received reduced priced meals from the cafeteria

I. B. Yoskowitz or his successor[6]

---

[4] Defendant objects to the expected testimony of Sheila Wiknik because the medical condition of Ms. Edith Wiknik is not relevant. *See* Fed. R. Evid. 402. *See also* Defendant's Motion in Limine.

[5] Defendant objects to any and all testimony by Robert Malcolm. Mr. Malcolm was not listed as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Defendant will be prejudiced by his testimony without proper discovery. Further, defendant objects to Mr. Malcolm's testimony as conclusory and speculative. Such lay testimony as to the "common knowledge" of Pratt & Whitney employees is inappropriate. *See* Fed. R. Evid. 701.

[6] Defendant objects to this witness on the basis that it is unclear what this person's testimony would be as well as who would be called.

**Defendant's List of Potential Witnesses:**[7]

| Name & Address | Position | Expected Testimony – In addition to the expected testimony of Defendant's witnesses as stated herein, Defendant may use any/all of its witnesses to rebut any assertions made by Plaintiff or his witnesses and reserves its right to modify the witnesses testimony. |
|---|---|---|
| Robert Begley[8] 6 Aspenwood Dr. Windsor CT 06095 | Investigator | • Mr. Begley is expected to testify about his investigation into Roland Cockfield and his experience, generally, as an investigator at Pratt & Whitney<br>• Mr. Begley is also expected to testify about the policies and procedures involved with such investigations and his experience doing so<br>• Mr. Begley is also expected to testify about the termination of another employee for violating company policies. |
| Fred T. Jones[9] 34 Oak Ridge Dr. Middletown, CT | Supervisor of Cockfield | • Mr. Jones was Mr. Cockfield's direct supervisor and is expected to testify about Mr. Cockfield's employment and his decision to terminate that employment<br>• Mr. Jones is also expected to testify about the policies and procedures relevant to the termination and his experience in the department |

[7] In addition to the general objections listed herein, Plaintiff intends to object to calling any witnesses to the extent they inted to offer lay opinion evidence or to testify to matters on which they lack personal knowledge or to the extent they will seek to report inadmissible hearsay statements. *See* Fed. R. Evid. 402, 403, 602, 701, 802.

[8] Plaintiff objects to the expected testimony of this witness of Robert Begley on the grounds of relevance to the extent his testimony relates to irrelevant information relating to investigative procedures and to facts which are not in dispute. Fed. R. Evid 402.

[9] Plaintiff objects to the expected testimony of witness Fred T. Jones to the extent the testimony is based on matters outside his personal knowledge, to matter which occurred more that 3 years prior to June of 1991, or to matter not relevant to the alleged bases for the termination of Plaintiff. Fed.R.Evid. 402.

| | | | department |
|---|---|---|---|
| David McGrath[10] 116 Fern Street Florence, MA | Manager Protective Services | | • Mr. McGrath is expected to testify about Mr. Cockfield's employment and his involvement in the decision to terminate Mr. Cockfield's employment |
| William J. Phelps[11] 4 Harmon Drive Suffield, CT 06078 | Investigator | | • Mr. Phelps is expected to testify about his investigation into Roland Cockfield and his experience, generally, as an investigator at Pratt & Whitney |
| William Schiffert, Jr.[12] 60 Shady Hill Lane Middletown CT 06547 | Manufacturing Support Supervisor | | • Mr. Schiffert is expected to testify about his observations of Mr. Cockfield and Ms. Wiknik and his role in the investigation into Mr. Cockfield |
| Christopher Walsh[13] 66 Ciccolla Court Southington, CT 06489 | Manager, Human Resources for Middletown | | • Mr. Walsh is expected to testify about his role in the decision to terminate the employment of Mr. Cockfield and his experience, generally, as a human resources representative for Pratt & Whitney |
| Records Custodian of ARA[14] | ARA Representative | | • This person is expected to testify about the records that ARA has about Ms. Edith Wiknik, |

---

[10] Plaintiff objects to any and all testimony by William McGrath. Mr. Malcolm was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery.

[11] Plaintiff objects to the expected testimony of this witness of William J Phelps on the grounds of relevance to the extent his testimony relates to irrelevant information relating to investigative procedures and to facts which are not in dispute. Fed. R. Evid 402.

[12] Plaintiff objects to any and all testimony by William Schiffer Jr.. Mr. Schiffert was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery. Further, Plaintiff objects to the expected testimony of this witness of Mr. Schiffer on the grounds of relevance to the extent his testimony relates to irrelevant information relating to investigative procedures and to facts which are not in dispute. Fed. R. Evid 402.

[13] Plaintiff objects to any and all testimony by Christopher Walsh. Mr. Walsh was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery.

| | | | |
|---|---|---|---|
| | | | employment and the circumstances of her termination of employment |
| Records Custodian of Pratt & Whitney | | TBD | • This person would authenticate business records of Pratt & Whitney, to the extent necessary. |
| James French[15] 141 Evergreen Rd Vernon Rockville 06066 | | Former Business Practices Officer for Pratt & Whitney | • This person is expected to testify about the policies and procedures of Pratt & Whitney, to the extent that this court allows the Plaintiff to testify regarding such policies |
| Lawrence Churchill[16] 37 Villa Louisa Road Glastonbury, CT 06033 | | Former V.P. of Public Affairs | • This person is expected to testify about a white employee terminated in December 1990 for violation of company policies and theft of property |

---

[14] Plaintiff objects to any and all testimony any unspecified witness at this time. Such witness was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery.

[15] Plaintiff objects to any and all testimony any unspecified witness James French. Mr. French was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery.

[16] Plaintiff objects to any and all testimony any unspecified witness Lawrence Churchill. Mr. Churchill witness was never mentioned during discovery as an individual having knowledge of the events underlying this litigation who would testify at trial. Thus, Plaintiff will be prejudiced by his testimony without proper discovery. Further, Plaintiff objects to the testimony of Churchill since there is no indication what this prospective would testify too.

-10-

9.    **LIST OF EXHIBITS**

**Plaintiff's List of Exhibits:**

DOCUMENTED EVIDENCE

1. Policy Concerning Conflicts of Interest, Dated December 10, 1990

2. Employee Termination Record.

3. Affidavit of Robert Graves Jr.[17]

4. Affidavit of Billy Mitchell[18]

5. W-2 Statements from 1990 to date

6. Typed Statement of Edith S. Wiknik

7. Handwritten Statement of Edith S. Wiknik[19]

8. Damage Analysis[20]

---

[17] Defendant objects to this exhibit on the grounds that it is inadmissible hearsay. *See* Fed. R. Evid. 802.

[18] Defendant objects to this exhibit on the grounds that it is inadmissible hearsay. *See* Fed. R. Evid. 802.

[19] Defendant objects to this exhibit on the grounds that it is not relevant and it is inadmissible hearsay. *See* Fed. R. Evid. 402, 802. *See also* Defendant's Motion in Limine.

[20] Defendant objects to this exhibit on the grounds that it lacks a proper foundation for admissibility and is hearsay. *See* Fed. R. Evid. 901, 802.

**Defendant's List of Exhibits:**[21]

1.  Pratt & Whitney's Plant Protection Manual.

2.  Anonymous letter (1 page).

3.  Statement of W.J. Phelps dated 6/27/91 (1 page).

4.  Internal Security Report dated 7/1/91 (2 pages).

5.  Statement of William Schiffert dated 6/27/91.

> a.  Handwritten Statement (5 pages).
>
> b.  Typed Statement (2 pages).

---

[21] The plaintiff objects on the grounds of relevance pursuant to Fed.R.Evid. 402. The defendant terminated the Plaintiff allegedly on the bases of theif of food from the cafeteria. There is no dispute that there was, in fact, no theif of any property of the defendant's or anyone else. Hence, the central relevant issues are (1) what was the relevant policy in place in June of 1991 and (2) was there any violation of that policy which was sufficient to provide rational bases for terminating the plaintiff. The only relevant policy document set forth by the defendant is presented in exhibit 21. (Pratt & Whitney's Statement of Policy Governing Conflicts of Interest date 12/10/90) The plaintiff challenges the relevance of the remaining Publication of Pratt, i.e., Defendant's Exhibits 20, 22 through 27, since there is no indication that these documents have any bearing on any ultimate issue in the case during the relevant time frame. Defendant's Exhibits 2 and 3 are irrelevant since there is no indication that these Exhibits were even directed to the Plaintiff, applied to the Plaintiff or that the plaintiff was informed about the content of these exhibits. (See attachment, Defendant's List of Exhibits)

The Plaintiff objects Defendants 13 through 17, and 28 through 31 on the bases of relevance. None of these documents bear any relevance's to the issues presented. Further, these documents relate performance matters back to as far as 1966. Not only are these exhibits irrelevant under Fed.R.Evid. 403, they are excludable under Fed.R.Evid. Rule 802, as hearsay. This is particular true since the defendant is not alleging that it applies a progressive discipline policy.

The Plaintiff further objects Exhibits 2, 3, 5, 18 and 19 as hearsay, under Fed.R.Evid 802, as hearsay. The statements comprising Exhibits 2, 3, 5, 18 and 19 are hearsay statement and there is not indication that they are being offered for any other reason.

-12-

(j)    1/16/86 Memo from L. Barrett to F. Jones re: P misusing company time (1 page).

(k)    1/17/86 letter from Mr. Spiwak (job applicant) re: encounter with Plaintiff (1 page).

(l)    1/23/86 Memo re: complaints for job performance (1 page).

(m)    8/10/87 Memo re: unsafe driving (1 page).

(n)    9/14/87 Reprimand for hazardous driving (1 page).

(o)    11/16/87 Final Warning re: unsatisfactory job performance; aggressive behavior (1 page).

(p)    9/22/88 Complaint re: Plaintiff (1 page).

(q)    11/16/88 Review re: poor public relations; no outside contact (1 page).

14. 3/7/86 Employee Performance Appraisal (1 page).

15. 7/15/86 Employee Performance Appraisal (1 page).

16. 3/12/87 Employee Performance Appraisal (1 page).

17. 3/9/88 Employee Performance Appraisal (1 page).

18. Plaintiff's letter to CHRO dated 9/28/92 (1 page).

19. Plaintiff's statement to CHRO investigator dated 9/14/92 (3 pages).

20. Pratt & Whitney's Policy Guide on Conflicts of Interest issued 1/9/76 and revised 5/15/86 (2 pages).

21. Pratt & Whitney's Statement of Policy Governing Conflicts of Interest dated 12/10/90 (2 pages).

-14-

22. Pratt & Whitney's Memorandum re: Policy Governing Conflicts of Interest dated 12/10/90 (5 pages).

23. Pratt & Whitney's Policy Guide on Discipline issued 1/9/76 and revised 5/15/86 (1 page).

24. Pratt & Whitney's Policy Guide on General Rules of Conduct issued 1/9/76 and revised 6/20/89 (5 pages).

25. Pratt & Whitney's Policy Guide on Legal and Ethical Conduct issued 1/20/87 and revised 2/15/89 (2 pages).

26. United Technologies letter to suppliers re: gifts dated 11/19/90 (1 page).

27. Pratt & Whitney notice re: business gifts dated 11/27/90 (1 page).

28. Security Report re: employee theft dated 10/25/90 (4 pages).

29. Statement of Bernard Cramer dated 10/22/90 (3 pages).

30. Termination letter re: Bernard Cramer (1 page).

31. Pratt & Whitney hereby gives notice that it may use Plaintiff's deposition testimony for the purposes of impeaching the Plaintiff or as evidence of admissions if Plaintiff refuses to make certain admissions in his trial testimony.

-15-

**10.    TRIAL TO COURT:**

**Stipulation of Uncontroverted Facts:**

1.  The Plaintiff, Roland Cockfield, was born on December 22, 1941.

2.  Plaintiff is African-American.

3.  Plaintiff is, and for all relevant times has been, a resident of the State of Connecticut, residing at 50 Rockledge Drive, Meriden, Connecticut.

4.  Pratt & Whitney is a Connecticut corporation, organized and existing pursuant to the laws of the State of Connecticut and duly authorized to conduct business in the State.

5.  Pratt maintains a place of business at Aircraft Road, Middletown, Connecticut.

6.  Pratt initially hired Plaintiff, in December, 1964, as an entry level security officer. (Employee Classification Record of Roland Cockfield.)

7.  On or about July, 1984, Pratt promoted Plaintiff to the position of Senior Plant Protection Officer, giving Plaintiff supervisory responsibilities. (Deposition of Roland Cockfield ("Pl.'s Dep.") at 78-79.)

8.  From July, 1984 until his termination, Pratt employed Plaintiff at its Middletown, Connecticut facility. (Pl's Dep. at 80.)

9.  As a Senior Plant Protection Officer, Plaintiff's responsibilities included: protecting all of Pratt's facilities, its contents and its personnel; conducing site inspections to ensure proper Fire Protection; and, ensuring adequate plant protection coverage. (Pl.'s Dep. at

-16-

("Security Report") at 1.) Accordingly, Pratt's Internal Security Department
commenced an investigation. (Security Report at 1.)

13. On June 26, 1991, around 10:55 a.m., two internal security officers, Begley and Phelps,
conducted surveillance of the cashier line at the Building 10 cafeteria. (Security Report
at 2.) At the time, the cafeteria was staffed by Edith Wiknik, a cashier and employee of
ARA Services. (Wiknik Statement at 2; Pl.'s Dep. at 51-52.)

14. Ms. Wiknik is now deceased.

15. During the surveillance, the officers observed Plaintiff place "a large hotdog and roll
and a cup on his tray." (Security Report at 2.) Plaintiff then proceeded to Ms.
Wiknik's checkout line. (Id.) Upon reaching Ms. Wiknik, Plaintiff handed her a five
dollar bill. (Security Report at 2; Pl.'s Dep. at 40, 50-59.) Ms. Wiknik took the five
dollar bill, and pulled out five one-dollar bills from the cash register, she then "counted
the (5) ones and handed them to" Plaintiff. (Id.) Plaintiff took the five one-dollar bills
and then proceeded to sit down for lunch. (Id.) After finishing his lunch, Plaintiff left
the building. (Security Report at 2.)

16. The security officers followed Plaintiff outside Building 10 and approached him.
(Security Report at 2.)

17. Plaintiff never heard either of the investigators make any race-related remarks. (Pl.'s
Dep. at 111.)

18. Plaintiff stated at that time that he was not aware of "any other employees, including
Fire/Security personnel, who [] received free lunches." (Pl.'s Statement at 1.)

-18-

19. Ms. Wiknik was interviewed by the investigators on June 26, 1991. (Wiknik's

     Statement at 1). Ms. Wiknik stated that, "Roland he did not know I was paying for his

     lunch." (Wiknik Statement at 1.)

20. Ms. Wiknik admitted that Plaintiff was "the only employee [she had] given free lunches

     to" and that she was "not aware of any other employees who have received free meals

     at [her] cafeteria." (Wiknik Statement at 1.)

21. On the afternoon of June 26, 1991, Mr. Jones met with Plaintiff. (Jones Aff. ¶ 11.)

     During this meeting, Mr. Jones notified Plaintiff that he was being suspended

     indefinitely pending further review of the situation. (Id.)

22. Plaintiff never heard Fred Jones make any race-related remark. (Pl.'s Dep. at 97.)

23. Mr. Jones notified Plaintiff, by telephone, of his decision to terminate him on June 28,

     1991. (Jones Aff. ¶ 14.) That decision was later confirmed in a letter to Plaintiff.

     (Termination Letter, dated July 22, 1991.)

-19-

**Plaintiff's Proposed Findings of Fact (in addition to the stipulated facts above):**

1.  Ms. Witnik was suffering from liver cancer. (Testimony of Sheila Wiknik)

2.  At the some time, Mr. Cockfield's father was also suffering from the effects of cancer. (Testimony of Roland Cockfield)

3.  Ms. Witnik and Cockfield maintained a personal relationship characterized by Ms. Witnik gratitude to Mr. Cockfield for his assistance by moving and placing heavy objects, assisting her in obtaining a handicapped parking location and a share concern for the effects of cancer. (Testimony of Roland Cockfield)

4.  Cockfield the only African-American Senior Plant Protection Officer at the Middletown facility of Pratt. (Testimony of Roland Cockfield)

5.  In late 1989-1990, a reorganization of the Security Department, resulted in Roland Cockfield being the only African American Senior Plant Protection Officer being salary based (as opposed to hourly based) and having supervisory responsibilities. (Testimony of Roland Cockfield)

6.  In fact there was no theft of any property, either to Pratt or ARA. (Testimony of Roland Cockfield, Statements of Ms. Witnik)

7.  In fact there was no Pratt policy which prohibited Cockfield from providing personal assistance to Ms. Witnik. (Testimony of Roland Cockfield, Robert Graves, and Billy Mitchell)

8.  Nor in fact does Pratt have any policy from prohibiting from expressing personal gratitude. (Testimony of Roland Cockfield, Robert Graves, and Billy Mitchell)

-20-

9.     Mr. Cockfield was not in a decision making position sufficient to request or grant any favor for ARA on behalf of his employer Pratt. (Testimony of Cockfield)

10.     Cockfield on many occasions attempted to refuse the gratuities offered by Ms. Witnik, but out of respect for Ms. Witnik's dignity on occasion accepted the gratuities. (Testimony of Cockfield).

11.     Ms. Witnik informed Pratt that she had previously received special permition from her supervisor, which permitted her to extend gratuities to persons who assisted her because of her illness. (Witnik Statement, Testimony of Fred Jones)

12.     No other employee holding a position in plant security had ever been terminated for accepting a gratuity have a nominal value from a cafeteria cashier. (Testimony Roland Cockfield, (Defendant TBD, Business Policy)

13.     That it was not an uncommon practice for particular personal of Pratt to receive grauties from vendors of nonminal value. (Testimony of Roland Cockfield, Billy Mitchell, and Robert Graves)

14.     No other employee salaried employee had been terminated for accepting a gratuity have a nominal value. (Testimony of Roland Cockfield, Billy Mitchell, and Robert Graves)

15.     No other non- minority employee, similarly situated in the security department had ever been terminated for accepting a gratuity from a vendor. (Testimony of Roland Cockfield, Billy Mitchell, and Robert Graves)

16.    The Defendant's policy, dated December 1990, provides: "It is, of course, a commonly accepted business practice to receive gratuities of nominal value (for example meals, entertainment, refreshments and advertising and promotional items … While difficult to define a 'customary business courtesy' with specificity, a common sense determination must be made to refuse anything which could appear as intended to influence." (Pratt. Policy)

17.    The Defendant maintains a progressive disciplinary policy applicable to all of its employees which call for, upon custom and practice and upon the infraction of an employment policy or work rule, an oral warning, followed by a written warning prior consideration of termination.  (Testimony of Roland Cockfield)

18.    The Defendant deliberately chose not to invoke its progressive diciplinary policy in order to immediately effectuate a termination of the Plaintiff.  Testimony of Roland Cockfield)

-22-

**Defendant's Proposed Findings of Fact (in addition to the stipulated facts above):**

1. As a Senior Plant Protection Officer, Pratt held Plaintiff to a higher standard of conduct than its other employees. (Testimony of Jones; Testimony of Plaintiff.)

2. Pratt required its Plant Protection Officers to learn, know and apply Pratt's policies and procedures. (Testimony of Jones; Testimony of Plaintiff.)

3. Pratt expected its Plant Protection Officers, including Plaintiff, to be firm and fair in applying Pratt's policies and procedures and to utilize tact, courtesy and integrity in executing the functions of the position. (Testimony of Jones; Testimony of Plaintiff).

4. As a Senior Plant Protection Officer, Plaintiff was required to have familiarity with Pratt's policies as they relate to the purpose of the cafeteria service, conflict of interest and the general rules. (Testimony of Jones).

5. Additionally, Pratt requires its Plant Protection Officers, including Cockfield, to learn, know and follow the policies contained in its Supervisor's Policy Guide on Conflicts of Interest ("The Guide"). (Supervisor's Policy Guide ("The Guide") § 403.) The Guide provides "...no officer or employee shall seek or accept, directly or indirectly, any payments, loans, gifts, services or any other form of compensation, benefits or persuasion from suppliers, customers or others doing business with or seeking to do business with the corporation." (Id.)

-23-