6. Moreover, Company policies prohibited theft of company property; in other words, the taking of property without permission. (Testimony of Jones).

7. Plaintiff was aware of all policies and procedures of Pratt & Whitney. (Testimony of Plaintiff; Testimony of Jones.)

8. On June 26, 1991 the investigators observed Plaintiff at Ms. Wiknik's cashier line. (Security Report at 2; Testimony of Begley and Phelps) Specifically, they observed Plaintiff hand Ms. Wiknik a five dollar bill. They then observed Ms. Wiknik take the five dollar bill and pull out five one-dollar bills from the cash register. Ms. Wiknik then "counted the (5) ones and handed them" to Plaintiff. (Id.) The investigators observed Plaintiff take the five one-dollar bills and proceed to sit down for lunch. (Id.) Pratt & Whitney's investigators did not observe Plaintiff pay for his lunch at any time. (Id.)

9. When confronted by the internal investigation officers on June 26, 1991, Plaintiff orally admitted to the misconduct observed by the officers. (Security Report at 2; Testimony of Begley)

10. Thereafter, in a written statement, Plaintiff specifically acknowledged that: (1) he had received a free lunch from the cafeteria; (2) he had given the cashier a five-dollar bill, and received the five one-dollar bills in exchange; (3) he had been receiving free or reduced price lunches for approximately six months; and (4) he regretted his actions. (Statement of Roland Cockfield ("Pl.'s Statement") at 1.)

-24-

Plaintiff made these admissions voluntarily, without any threats or promises. (Pl.'s Statement at 1; Pl.'s Dep. at 49-50.)

11. Pratt's Internal Security Department interviewed the Building 10 cashier, Ms. Wiknik on June 26, 1991. (Wiknik Statement at 1; Testimony of Begley) Ms. Wiknik confirmed that Plaintiff had received and continued to receive meals without paying for them. (Id. at 2.) Specifically, Ms. Wiknik admitted that: (1) she had provided Plaintiff with "a free lunch" on June 26, 1191; (2) she had given Plaintiff "free lunches and an occasional breakfast"; (3) Plaintiff "would give [her] the money, however, [she] would return the same amount of money to him"; (4) because of a complaint regarding the free lunches, she planned to stop the practice; (5) this practice had gone on for the past 1 ½ years. (Id. at 1-2.)

12. Mr. Jones believed that Plaintiff's repeated acceptance of free meals for a period of at least six months, and possibly much longer, and the actions described in the security report violated Pratt & Whitney policies. (Testimony of Jones.)

13. Plaintiff knew that his misconduct, in repeatedly accepting food without paying for it, was wrong. (Pl.'s Statement at 1.)

14. Plaintiff admitted that his misconduct was wrong. (Pl's Statement at 1.)

15. Plaintiff understood the severity of his misconduct. (Testimony of Jones.)

16. Mr. Jones terminated Plaintiff for violation of company policies. (Testimony of Jones.)

-25-

17. Ms. Wiknik was similarly terminated by ARA Services for her involvement in the June 26, 1991 incident. (Testimony of Cockfield; Testimony of Begley.)

18. Pratt's discipline policy does not require progressive discipline. (The Guide § 411; Testimony of Jones.)

19. At the time of Plaintiff's termination, Mr. Jones was not aware of any other Plant Protection Officers that allegedly received free meals from the cafeteria (Testimony of Jones.)

20. There is no evidence that any similarly situated employee outside of Plaintiff's protected class engaged in similar misconduct. (Testimony of Plaintiff.)

21. Pratt & Whitney has applied its policies to white employees; specifically, just six months prior to Plaintiff's termination, Pratt & Whitney terminated a management employee for violation of company policies including the taking of wine without paying for it. (Testimony of Churchill; Testimony of Begley).

22. Plaintiff was not terminated for any racially discriminatory reason. (Testimony of Jones.)

### Plaintiff's Proposed Conclusions of Law:

1. An individual is protected from race discrimination under Title VII if his employer discriminated against him, with respect to the terms and conditions of his employment, because of his race, color or national origin.

> *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

2. It is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, or national origin.

> Title VII of the Civil Rights Act of 1964, as amended, §703(a)(1), 42 U.S.C. §2000e-2(a)(1) (1997).

3. An employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class in violation of Title VII.

> *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3rd Cir. 2000).

4. The plaintiff, in order to establish a prima facia case, must prove:
   1. He is in the protected class;
   2. He was qualified for his position;
   3. He suffered an adverse employment action; and
   4. That the adverse action occurred under circumstances giving rise to an inference of discrimination.

> ***Holt v. Rockefellow & Co.***, 258 F.3d 62, 76 (2d Cir. 2001).

5. The plaintiff, Roland Cockfield, is a African America. His qualifation for the position are unchallenged having held the position of Plant Protection Officer since 1964, a Senior Plant Protection Officer since 1986 and a Senior Plant Protection Officer with Supervisory

responsibilities since 1990. On June of 1991, Mr. Cockfield was terminate for alledgely stealing a hot dog and cup of water from the cafateria, eventho Pratt knew that no thief had occurred.. Mr Cockfield was the only African American Senior Plant Protection Officer at the Middletown facility at the time. At that time, Mr. Cockfield had been employed by Pratt for over 20 years. To terminate a 20 plus senior Aferican American employee alleging thief when infact no thief had occurred. Ms. Witnik's statement that she paid for Mr. Cockfield's lunch because of his special kindness to her in light of her life threatening condition. For Pratt, to then terminate is clear more than a mere inference of discrimination.

6.  A plaintiff under Title VII may raise an inference of discriminatory animus by offering evidence comparing himself or herself to similarly situated individuals who are not a member of that protected class, who are treated more favorably.

> *Morris v. Harris Trust & Savs. Bank*, 867 F.2d 1023, 1026 (7th Cir. 1989);
> *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988).

The Plantiff has established through the testimony of its witnesses, that the receipt of minor gratuities by member of the security department and other ancillary departments of Pratt at its Middletown facility was not unusual. To terminate the only African America Senior Plant Protection office under such unusual circumstance surely raises an inference of discrimination.[22]

---

[22]   The plaintiff strong urges to court to accept all the statements made by Ms. Witnik as evidence.

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A)the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant. Fed.R.Evid. RULE 807

-28-

7. Once the plaintiff has established a prima facie case, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action.

> *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142.

Evidence demonstrating that the legitimate, nondiscriminatory reasons advanced by the employer are false may be, in and of itself, sufficient to establish intentional discrimination.

> *Board of Education of the City of Norwalk v. Commission on Human Rights and Opportunities et. al.*, (Conn. SC 16796)

8. In attempting to justify its action, United Technologies, a highly suficated 28 billion dollar company, said that it committed an deliberate error in citing thief as a bases for the termination of Cockfield. Pratt must make this admission since the termination notice cites thief when in fact at the time Pratt know that there was no thif. Pratt then attempts to justify it action by saying that Cockfield violated company policy, in direct contlrodiction to the language of the applicable policy. Thirdly, Pratt attempt to say that notwithstanding there was applicable policy that somehow without explaination, Cockfield was held to some unwritten higher standards than anyone else in the company. None of the reason offered by Pratt for the termination of Cockfield stand the test of legitimacy.

9. The standard of proof in a claim raised under Title VII of the Civil Rights Act of 1964 is by a preponderance of the evidence.

> *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

10. The evidence establishing Plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification for its adverse employment action is false, may permit a finding that the employer unlawfully discriminated against Plaintiff.

> *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000).
>
> A showing that employer's proffered legitimate explanation for termination is not worthy of belief is one form of circumstantial evidence that is probative of

-29-

> intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that employer is dissembling to cover up a discriminatory purpose. *Windham v. Time Warner, Inc.*, 275 F.3d 179 (2nd Cir. 2001).

This court may find form the Plaintiff if the court finds that the stated reasons given by Defendant are inconsistent or implausible or that Defendant substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for discrimination. If you find pretext, you may also infer that race was a motivating factor in the employment decisions, though you are not required to draw such an inference.

> *Turner v. American Red Cross Tissue Servs.*, 2001 U.S. App. LEXIS 4359 (10th Cir. 2001) (Unpublished).

The Plaintiff has reguested the grant of pack pay with interest and attorney fee which is authorized in its discretion. In any action commenced pursuant to this title [42 USCS sec. 2000a-2000a6], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, and the United States shall be liable for costs the same as a private person.

> *42 USCS sec. 2000a-3(b)*

-30-

**Defendant's Proposed Conclusions of Law:**

1. Cockfield has presented insufficient evidence upon which to reasonably conclude that his termination occurred under circumstances giving rise to an inference of race discrimination.

2. Cockfield has not presented any direct evidence of racial discrimination. "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e. unlawful discrimination) without any inferences or presumptions." Townsend v. Clairol, Inc., No. 3:97CV02599 (AWT), 2001 U.S. Dist LEXIS 2005, at * 12 (D.Conn. Feb. 15, 2001), aff'd 26 Fed. Appx. 75 (2d Cir. 2002) quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 958 (5th Cir. 1993). Cockfield has offered no direct evidence to support his discrimination claim. Cockfield has not identified any probative comment or conduct by a decision-maker, or any other conduct that would give rise to an inference of discrimination. Cockfield never heard the decision-maker, Fred Jones, make a race-related remark. Nor did he hear the investigators make any race-related remark.

3. Cockfield cannot establish his race discrimination claim through indirect proof. Because there is no direct evidence of discrimination, Cockfield must attempt to prove his case by indirect proof. To establish a prima facie case of discrimination, based on indirect proof, Cockfield must prove by a preponderance of the evidence that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment decision; and (4) the decision occurred under circumstances giving rise to an

-31-

inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Raytheon v. Hernandez, 2003 U.S. LEXIS 8965, at *11, n. 3 (Dec. 2, 2003).

4. While Cockfield can establish the first three elements of a prima face case, Cockfield has failed to establish a prima facie case because he has no proof that his termination occurred under circumstances supporting an inference of race discrimination.

5. Cockfield has not established that any similarly situated employees outside of his protected class were treated differently. The issue of whether a fellow employee is similarly situated is somewhat strict. Brown v. Middaugh, 41 F. Supp. 2d 174, 184 (N.D.N.Y. 1999).

6. Cockfield must compare himself to employees who are "similarly situated in all material respects." Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95-96 (2d Cir. 1999) (emphasis added). What constitutes "all material respects" must be judged based on "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which employer imposed discipline was of comparable seriousness." Graham v. Long Island Rail Road, 230 F.3d 34, 40 (2d Cir. 2000).

7. Cockfield has not identified any similarly situated employees outside of his protected class who were treated differently by Pratt & Whitney. Cockfield himself admitted during the investigation into his conduct that he was not aware of any other employees receiving free meals. Pursuant to the findings, Cockfield was not aware of any other employees that engaged in conduct that he believes is similar to his who were not disciplined or

-32-

terminated. Cockfield's attempts, twelve years later, to state that other employees engaged in similar behavior is not credible.

8. The alleged "white employee terminated for allegedly stealing food in the cafeteria and then reinstated through the grievance process" referred to in the testimony of Mr. Graves and/or Mr. Mitchell is not similarly situated to Cockfield. First, Cockfield has presented no details or specific facts upon which to conclude that this employee is similarly situated. See Jenkins v. Area Coop. Educ. Servs., 248 F. Supp. 2d 117, 126-28 (D.Conn. March 10, 2003). More importantly, this employee cannot be deemed similarly situated because, if he was reinstated through the grievance process as asserted by Cockfield, he was necessarily a union employee. Cockfield was not a union employee and, therefore, did not have access to the same grievance process as this alleged white employee. This material difference in their circumstances precludes a finding that the alleged white employee is similarly situated to Cockfield. Norville, 196 F.3d at 95-96. In any event, Plaintiff has not presented any evidence to demonstrate that this unnamed individual is similarly situated to himself in all material respects.

9. Cockfield's unsubstantiated allegations that the "whole security department" received free food from Pratt & Whitney vendors are also insufficient to establish that similarly situated employees were treated differently. See Jenkins, 248 F. Supp. 2d at 126-28. Cockfield admitted that "while he heard people got" free food "he cannot prove it – the same thing have happened. I can't prove it." Because Cockfield cannot prove by a preponderance of the evidence that similarly situated employees outside of his protected class were treated

-33-

differently, and the only basis for his allegations that they were treated differently is gossip and rumors, Cockfield has not met his burden of proving a prima facie case. See Velez v. Project Renewal, No. 02Civ3084 (AKH), 2003 U.S. Dist. LEXIS 2477, at *13 (S.D.N.Y. February 19, 2003).

10. That other employees allegedly ate food left in the security office by vendors is insufficient to support a finding that these employees are similarly situated. The touchstone is whether the employees engaged in conduct of "comparable seriousness." Graham, 230 F.3d at 40. A group of employees eating left-over food is not comparable to one employee repeatedly accepting free meals for a period of up to 18 months. Moreover, the deceptive nature of Cockfield's actions in receiving these free meals (i.e. conducting a sham transaction) further supports a finding that these instances are not of comparable seriousness.

11. Even if Cockfield could establish a prima facie case, Pratt & Whitney has established legitimate, nondiscriminatory reasons for his termination. Cockfield was fired after an investigation established that for a period of at least six months he was receiving free meals from Ms. Wiknik, a cafeteria worker from an outside company, in violation of company policy. Further, Cockfield's deception, engaging in sham transactions with the cashier to make it appear that he was paying for his meals, further supports his termination for misconduct. These reasons are legitimate and nondiscriminatory.

12. If Pratt & Whitney applied a neutral, generally applicable company policy to Plaintiff in terminating his employment, the decision could not have been on account of his race. See Raytheon v. Hernandez, 2003 U.S. LEXIS 8965, at *18-19 (Dec. 2, 2003) (if the employer

-34-

did apply a neutral, generally applicable policy then its employment decision can in no way have been said to be motivated by the plaintiff's protected classification).

13. Pratt & Whitney need not prove by a preponderance of the evidence that the reasons for its actions were not unlawful, since the burden of proof remains with the plaintiff throughout the case. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); See also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993).

14. Pratt & Whitney has met its burden of producing legitimate, non-discriminatory reasons for terminating Cockfield even if the court determines that Cockfield's conduct was not, in fact a violation of company policy. "Where an employer wrongfully believes that an employee has violated a company policy, it does not discriminate in violation of Title VII if it acts on that belief." Jeffries v. Harris County Community Action Ass'n, 615 F.2d 1025, 1036 (5th Cir. 1980); see also Francoeur v. Corroon & Black Co., 552 F. Supp. 403, 411 (S.D.N.Y. 1982) ("the issue here is not whether in hindsight…plaintiff's actions warrant her dismissal"). As the findings show, Cockfield himself agreed that if Pratt & Whitney thought he was stealing, it would be grounds for his termination.

15. Courts must be careful not to second-guess an employer's business judgment that it makes in good faith. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1226 (2d Cir. 1994) citing Hicks, 509 U.S. at 519. Here, Pratt made a good faith decision to terminate Cockfield based on his violation of company policy and extreme lack of judgment and integrity in repeatedly accepting free meals.

-35-

16. Cockfield cannot prove, as is his ultimate burden to do, that the explanation offered by Pratt & Whitney was false <u>and</u> that intentional discrimination was the real reason for his termination. <u>Reeves</u>, 530 U.S. 143; <u>Hicks</u>, 509 U.S. at 515; <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 110 (2d Cir. 1994). "It is not enough…to <u>dis</u>believe the employer; the fact finder must <u>believe</u> the plaintiff's explanation of intentional discrimination." <u>Reeves</u>, 530 U.S. at 147; <u>Hicks,</u> 509 U.S. at 519.

17. Apart from the fact that he is black and he was terminated, Cockfield has presented no evidence to support his allegation of a racially discriminatory termination. "Purely conclusory allegations of discrimination, absent any concrete particulars, are insufficient." <u>Barriera v. Bankers Trust</u>, 98Civ3641 (MBM), 2003 U.S. Dist. LEXIS 18601, at * 12 (S.D.N.Y. Oct. 20, 2003) <u>citing</u> <u>Cameron v. Cmty. Aid for Retarded Children, Inc.</u>, 335 F.3d 60, 63 (2d Cir. 2003); <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985), <u>cert denied</u> 474 U.S. 829 (1985).

18. Because Cockfield has no evidence that Pratt & Whitney's legitimate, nondiscriminatory reasons for terminating him were mere pretext for racial discrimination, and that his race actually motivated and was a determinative factor in Pratt & Whitney's decision to terminate him, judgment should enter for Pratt & Whitney on the sole count of race discrimination. <u>Reeves</u>, 530 U.S. at 141 (liability depends on whether the protected trait actually motivated the employer's decision-making and had a determinative influence on the outcome).

-36-

19. Cockfield failed to prove that he was terminated because of his race and, therefore, he is not entitled to any damages.

-37-

11. **OBJECTIONS:**

**Plaintiff's Objections to Defendant's Conclusions of Law:**

Plaintiff objects generally to defendant's conclusions of law insofar as they state or imply that there was any rational bases stated for the termination of the Plaintiff other than on account of his race. Plaintiff object to the defends conclusion of law to the extent that they are predicated on conclusion without any evidentiary support..

**Defendant's Objections to Plaintiff's Legal Claims:**

Pratt & Whitney objects generally to Plaintiff's proposed conclusions of law insofar as they state or imply that Pratt & Whitney discriminated against Plaintiff on account of his race. Ultimately, Plaintiff must prove by a preponderance of the evidence that Pratt & Whitney intentionally discriminated against him on account of his race when it terminated his employment. Any suggestion by the Plaintiff that Pratt & Whitney maintains any burden of proof or that Plaintiff's burden is less than that stated above is incorrect.

Pratt & Whitney further objects to Plaintiff's numbered conclusions of law as follows:

(1) Pratt & Whitney objects to Conclusion 1 on the grounds that this case is about whether Pratt & Whitney discriminated against the Plaintiff for terminating his employment, not the "terms and conditions" of employment as the conclusion would imply.

(2) Pratt & Whitney objects to Conclusion 2 on the grounds that this case is about whether Pratt & Whitney discriminated against the Plaintiff for terminating his employment, not the "terms and conditions" of employment or hiring practices as the conclusion would imply.

(3) Pratt & Whitney objects to Conclusion 3 on the following grounds:

-38-

(a) Plaintiff's relies on cases from outside this circuit that are not precedential.

(b) This conclusion is not relevant in this matter; the issue for the court to decide is whether Pratt & Whitney intentionally discriminated against the Plaintiff, not a class of individuals.

(4) Pratt & Whitney does not object to Conclusion 4; however, Pratt & Whitney believes that its proposed conclusions more accurately reflect the court's analysis under the burden-shifting test.

(5) Pratt & Whitney objects to proposed Conclusion 5, on the grounds that it is not a conclusion, but rather a conclusory assertion unsupported by case law. This court need not adopt such a conclusion.

(6) Pratt & Whitney objects to Conclusion 6 for the following reasons.

(a) The cases cited by Plaintiff do not directly stand for the proposition for which Plaintiff credits them. While Plaintiff may satisfy a prima facie case by showing that similarly situated employees were treated differently, Plaintiff must still prove intentional race discrimination in order to prevail. Morgan, 867 F.2d at 1027 ("such a link [between plaintiff's race and discharge], however, merely creates a presumption which defendant may rebut...the ultimate burden of proving intentional discrimination stays with the plaintiff."). See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000).

(b) Plaintiff's reliance on these cases is ultimately misplaced because these cases support Pratt & Whitney's position. Morgan, 867 F.2d at 1027 (Plaintiff failed to make prima facie case because there was no showing he was treated differently on account of his race); Lanear

-39-

v. Safeway Grocery, 843 F.2d 298, 301-02 (8th Cir. 1988) (Judgment for employer following bench trial because court found comparator employee was not similarly situated and Plaintiff failed to show that employer engaged in intentional discrimination).

(d) Plaintiff's remaining statements are not conclusions of law but rather conclusory assertions unsupported by case law. Therefore, this court should not adopt these proposed conclusions.

(e) Pratt & Whitney objects to the use of a written statement purportedly made by Edith Wiknik on May 12, 1992. *See* Defendant's Motion in Limine.

(7) Pratt & Whitney objects to Conclusion 7 as follows:

(a) Pratt & Whitney objects to this proposed conclusion to the extent that Plaintiff implies that any burden of proof shifts to Pratt & Whitney. See <u>Hicks</u>, 509 U.S. at 506-07 (employer need not prove by a preponderance of the evidence that the reasons for its action was not unlawful because the burden of persuasion remains with the plaintiff throughout the case); See also <u>Reeves</u>, 530 U.S. at 143 (the ultimate burden of proving that the employer intentionally discriminated remains at all time with the plaintiff).

(b) Pratt & Whitney further objects to Plaintiff's last statement in paragraph 7 because evidence that the employer's reason for termination is false is <u>not</u> in and of itself sufficient to support a finding of intentional discrimination. <u>Reeves</u> established that a plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification was false <u>may</u> permit the trier of fact to conclude the employer discriminated. However, the <u>Reeves</u> court also stated "this is not to say that such a showing by the [plaintiff] will <u>always</u> be adequate to

-40-

sustain a jury's finding of liability." Reeves 530 U.S. at 146-48 (emphasis added). The burden remains on Plaintiff to prove that the explanation offered by Pratt & Whitney is false and that intentional discrimination was the real reason for his termination. Reeves, 530 U.S. at 146-48; Hicks, 509 U.S. at 515; Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir. 1994).

(8)     Pratt & Whitney objects to Conclusion 8 because these statements are not proposed conclusions but rather argument. Indeed, this "argument" is misleading in its assertions and is not based on any case law. Furthermore, to the extent that this argument suggests that Pratt & Whitney has made certain admissions in this matter, Pratt & Whitney denies those suggestions.

(9)     Pratt & Whitney objects to Conclusion 9 insofar as Plaintiff fails to conclude that the burden remains on him throughout the case and that it is the Plaintiff, and the Plaintiff alone, that must prove his case by a preponderance of the evidence. See Reeves, 530 U.S. 143.

(10)     Pratt & Whitney objects to Conclusion 10 because it is an incomplete discussion of the applicable case law. Pratt & Whitney refers to its proposed conclusions of law 16 which better reflects the applicable law. Further, Plaintiff's reliance on cases from outside this circuit should not be followed as they are not precedential and do not stand for the proposition Plaintiff credits them. Specifically, Pratt & Whitney objects because Plaintiff quotes from a jury instruction that was given in a trial in Oklahoma on a failure to promote claim, which has no relevance in the matter before this court. Pratt & Whitney also objects to Plaintiff's conclusion that he is entitled to any damages and specifically that he is entitled to attorneys' fees.

-41-

| THE PLAINTIFF | THE DEFENDANT, |
|---|---|
| By: *[signature]* Charles Parks (DA *by telephone*) | By: *[signature]* |
| Charles G. Parks, Jr. (ct16784) | Albert Zakarian (ct04201) |
| Parks & Associates, 160 Forest Street | Daniel A. Schwartz (ct15823) |
| Stamford, CT 06901-2134 | Day, Berry & Howard LLP |
| (203) 359-3860 | CityPlace I |
| (203) 323-7398 (fax) | Hartford, CT 06103-3499 |
| His Attorney | (860) 275-0100 |
|  | (860) 275-0343 (fax) |
|  | Their Attorneys |

-42-