of the decision making process that Jones, Walsh, and McGrath engaged in when deciding to terminate Cockfield - not even, for example, a note to Cockfield's personnel file with a notation of the specific company rules Cockfield allegedly violated. While, at Cockfield's prompting, Jones sent Cockfield a letter dated July 22, 1991, in which he generically stated that Cockfield's termination was "due to violations of Company rules," neither Jones nor anyone else from Pratt before trial ever informed Cockfield of, or otherwise identified, the specific rules he allegedly violated. The absence of contemporaneous evidence contrasts with the different reality Pratt attempted to demonstrate at trial, with Jones citing company rules by chapter and verse.

Jones essentially admitted that the rule against theft, which was supposed to form the triggering basis for Cockfield's termination, did not actually prohibit Cockfield's conduct, and that, without assuming both that Wiknik did not balance the register and did not have permission to give away free meals - two facts not established by the investigation prior to Cockfield's termination - Cockfield could not be said to have stolen. Moreover, Jones admitted that the rule did not cover property interests of ARA but only those of Pratt, and this admission, considered in conjunction with Jones' testimony that he, Walsh, and McGrath had identified ARA's property as what had

33

been stolen in the crucial post-investigation termination decision meeting, shows recognition that Pratt's rule against theft did not cover Cockfield's conduct.

Second, Jones' testimony regarding his review of various items from the statements of Cockfield, Wiknik, and Schiffert is suspiciously selective. He accepted the statement of Schiffert, an individual he knew only in passing, over both Cockfield and Wiknik, notwithstanding that he had known Cockfield to be a good worker for many years, had never known him to be involved with stealing, and had never heard any allegation of theft against him. He disbelieved Wiknik's statement that she balanced the register and paid for Cockfield's lunch from her own pocket, notwithstanding Schiffert's observation that she had in fact rung up $2.00 on her register on June 26, 1991 when Begley and Phelps observed the equal money exchange between Wiknik and Cockfield. Jones says he believed Schiffert's statement that Cockfield would occasionally take food from the cafeteria and walk by the register without paying, giving no credit to Cockfield's explanations.

In addition, faced with Schiffert's report of "hourly workers" and John Gustaitus engaging in conduct Jones considered stealing, Jones took no action. Begley explained the lack of action on the basis that Schiffert stated that Gustaitus' free meals had ended. Yet if the same conduct was sufficiently

34

serious to fire a 27-year employee with a good employment record, surely even Gustaitus' discontinued stealing would have merited some disciplinary attention.

Similarly, Jones' statement that he considered important in reaching a decision to fire Cockfield the fact that Cockfield did not fulfill his duty to report Wiknik's "theft" begs the question why Jones took no action against Schiffert, a supervisor with identical obligation to ferret out "theft," and who clearly had not timely reported the various "thefts" of cafeteria food memorialized in his statement. Jones in fact took no action whatsoever in regard to Schiffert's lapse, including, for example, any attempt to determine whether Schiffert had timely reported the alleged thefts.

Finally, Jones' repeated statements to Cockfield that upper management had forced Jones' hand and Jones had nothing to do with the investigation or ultimate termination decision, when in fact Jones testified that he instigated the investigation and ultimately decided to fire Cockfield, demonstrate that Jones was not forthcoming about the true process by which the termination decision was made.

Taken together, this evidence leads the Court to conclude that Pratt's espoused legitimate, nondiscriminatory reason for firing Cockfield — violations of the company no-theft rules — was pretextual. Pratt had not examined its own company policies at

35

the time it fired Cockfield, and Jones' actions with respect to John Gustaitus demonstrate that even after Jones became aware of the fact that other employees aside from Cockfield were obtaining free meals, Jones did not consider the issue sufficiently important to further investigate.

### 2. Evidence of Race Discrimination Against Cockfield

Notwithstanding this proof of pretext, Cockfield has failed to meet his ultimate burden of showing that the real reason for Pratt's actions was race-based animus. Cockfield proffered no evidence that similarly-situated non-black employees were treated differently than he was.

First, Cockfield provided no evidence that the decisionmakers on his case (Jones, Walsh and McGrath) knew, before they began investigating him, that anyone except Cockfield had ever obtained free meals from the Building 10 cafeteria. Graves, who is white, testified that he had received free food, and he testified that other workers also had gotten free soup from a communal pot. However, Graves did not state whether he or anyone else reported these occurrences to Jones, Walsh or McGrath. Similarly, Malcolm testified that he had observed plant personnel getting free food from vending machines, but he did not testify that the three individuals in charge of Cockfield's case ever knew or had reason to know that other employees were taking that food. Mitchell also testified that other, unspecified,

36

individuals had gotten free coffee and cookies from the cafeteria, but again he did not say that he or anyone else ever brought this to the attention of Jones, Walsh or McGrath. Finally, Cockfield testified, as well, that he knew of other people of unspecified race receiving free meals from the Building 10 cafeteria, but he had claimed in his written statement that he did not know of anyone else doing so because he did not want to get people in trouble. Thus Cockfield's own statement indicates an intention to conceal the pattern of receiving free food on the part of Pratt employees from Pratt management. If the decisionmakers within Pratt management - namely Jones, Walsh and McGrath - did not know that other employees aside from Cockfield ever received free food from the cafeteria, then they could not be said to have chosen to discipline Cockfield while refusing to discipline other employees who had taken the same actions.

More importantly, neither Graves, Malcolm, Mitchell, nor Cockfield identified the race of the other, unnamed individuals who were getting free food from the Building 10 cafeteria and vending machines during the 1990/1991 period. While under Title VII Cockfield could meet his ultimate burden with many types of evidence, his theory of the case was that he was treated differently from similarly-situated non-black employees. Therefore, under this theory, he needed to establish that there were non-black individuals getting away with eating free food

from the cafeteria, without discipline (or without such serious discipline) from Pratt, while he was fired for doing so. However, Cockfield presented no such evidence at trial.

Cockfield's evidence about thefts committed by Bernard Cramer, a white employee, does not ultimately weigh in his favor. The evidence showed that Pratt undertook a more thorough investigation in Cramer's case, even to the extent of hiring a handwriting expert from the Connecticut State Police. While Cramer was more thoroughly investigated, that is consistent with the extensive nature of his theft, his initial denial, and his position as a company vice president; he was clearly differently situated from Cockfield, and none of the decisionmakers involved with Cockfield's case (Jones, Walsh, and McGrath), were involved in Cramer's case. Thus Cramer's circumstances cannot show that those particular decisionmakers treated Cockfield less favorably than a similarly- situated white employee who stole from the company.

In the larger picture, while defendant's record of treatment of a long term employee is indeed shabby and disingenuous, the Court has no basis for concluding that race played a determinative role in Pratt's employment actions.

38

### III. Conclusion

As set forth above, the Court has concluded that plaintiff has not proved that defendant violated Title VII of the Civil Rights Act of 1964, and therefore judgment is entered in favor of defendant. The Clerk is directed to close this case.

                    IT IS SO ORDERED.

                    Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut: September 30, 2004.